FRANKLIN E. ERICKSON and HELEN A. ERICKSON, Petitioners, v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Erickson v. Commissioner
Docket No. 6323-71.
United States Tax Court
T.C. Memo 1976-147; 1976 Tax Ct. Memo LEXIS 256; 35 T.C.M. (CCH) 665; T.C.M. (RIA) 760147; May 13, 1976, Filed Wallace T. Hyde, for the petitioners. Edward B. Simpson, for the respondent. QUEALY
MEMORANDUM FINDINGS OF FACT AND OPINION QUEALY, Judge: The respondent determined deficiencies in the joint Federal income tax returns of petitioners as follows: Taxable years
Deficiency
1965
$ 2,281.83
1966
16,607.70
1967
20,359.41
1968
75,514.19
Due to concessions by the parties, the issues remaining for decision are as follows: (1) Whether petitioners *257 are entitled to deduct the losses and depreciation on account of the operation of the "Wayside Inn" for the period beginning June 1, 1967 through the taxable year 1968; (2) Whether amounts claimed by Erickson Construction Company as travel and entertainment expenses are taxable as a dividend to petitioners in the taxable years 1965, 1966 and 1967; and (3) The extent to which the proceeds from the condemnation of real estate received by petitioners in the taxable year 1966 was reinvested in qualified replacement property pursuant to section 1033. [1]
FINDINGS OF FACT Some of the facts have been stipulated. Such facts and the exhibits attached thereto are incorporated herein by this reference. Petitioners Franklin E. and Helen A. Erickson, husband and wife, filed joint Federal income tax returns for the taxable years 1965, 1966, 1967 and 1968 with the District Director of Internal Revenue, San Francisco, California. At the time of the filing of the petition herein, petitioners resided in Sacramento, California. In May 1962, Franklin E. Erickson (hereinafter *258 sometimes referred to as "petitioner") and two associates entered into a 20-year lease with the Pettitucci Investment Company for land and a building, which was being operated as a drive-in restaurant. Petitioner renovated and expanded the restaurant building and renamed it the "Wayside Inn." In 1963 petitioner took over the entire venture because of the failure of his associates to meet their financial commitments. During the years in question, petitioner was the sole shareholder and president of each of the following corporations: Erickson Construction Company, Erickson Heavy Construction Company, Erickson Investment Company, and Arden Sand and Gravel Company (hereinafter sometimes referred to as the "four corporations"). As of June 1, 1964, petitioner entered into a purchase agreement with the four corporations whereby the four corporations purchased the leasehold interest in the Wayside Inn (hereinafter sometimes referred to as the "Wayside lease") and the improvements for a total consideration of $281,491. Entries were made in the books and records of the four corporations and in the books and records of petitioner to reflect that purchase. As of June 1, 1964, the four *259 corporations thereupon entered into an agreement to lease the Wayside Inn to petitioner. The lease agreement provided that the lease would commence June 1, 1964, and end May 15, 1982. It also provided that the lessee would pay the four corporations a fixed yearly rental of $16,000 and that, in addition to the fixed amount, the four corporations would share equally with petitioner in the net profit or loss on a yearly basis. On or about June 1, 1964, the four corporations formed the Wayside Investment Company, a partnership, and transferred the Wayside lease interest and improvements to the partnership. Each of the four corporations had a 25 percent interest in the partnership. The partnership maintained its books and records and reported for Federal income tax purposes on a fiscal year basis, with the first taxable year beginning June 1, 1964, and ending May 31, 1965. The partnership filed partnership returns for the taxable years ended May 31, 1965, May 31, 1966, and May 31, 1967. On the depreciation schedule attached to such returns there was listed the property acquired from petitioner on or about June 1, 1964, and other property later acquired for the operations of the Wayside *260 Inn. In 1964 petitioners commenced operating the Wayside Inn. For the taxable years 1965 to 1968, inclusive, the income and expenses from the operation of the restaurant were reported by petitioners in their Federal income tax returns as a sole proprietorship. Losses were sustained for all years. In accordance with the agreement of June 1, 1964, for the taxable years 1965 and 1966 petitioners allocated 80 percent of the net operating loss of the restaurant to the four corporations, reporting the remaining 20 percent in their income tax returns. For each of the taxable years ended May 31, 1965, May 31, 1966, and May 31, 1967, the partnership returns of Wayside Investment Company reported as income the fixed yearly rental of $16,000 per year. The partnership also reported various expenses associated with the rental of the Wayside Inn, including the ground rent on the Wayside lease. In addition, the partnership reported in each fiscal year that portion of the net loss of the Wayside Inn allocable to the four corporations. Respondent accepts the allocation of the loss in the manner reported for those years. Franklin E. Erickson, as president of each of the four corporations, *261 addressed a letter to Franklin E. Erickson, individually, from each of said corporations stating that as of June 1, 1967, the lease of the Wayside Inn entered into on June 1, 1964, was rescinded. However, there is no record of the transfer of the leasehold to petitioner, individually, in the books and records of Wayside Investment Company (the partnership), the books and records of the four corporations, or the books and records of Franklin E. Erickson, individually. There likewise is no record of any corporate resolution adopted by any of the four corporations with respect to the transfer of the leasehold to the petitioner. For the taxable year 1967, the operation of the Wayside Inn resulted in a loss amounting to $73,924.00. Of this amount, $23,874.27 was allocable to operations for the period January 1 to May 31, 1967. In accordance with the agreement of June 1, 1964, $19,100.63 of the loss sustained from January 1 to May 31, 1967, was reported by Wayside Investment Company, the partnership, and allocated to the four corporations. In their return for the taxable year 1967, petitioners claimed a deduction on account of the losses sustained in the operation of the Wayside Inn *262 for the entire taxable year amounting to $73,924.00. Petitioners now concede $19,100.63 of that loss was erroneously deducted in their return and is properly allocable to the four corporations. For the taxable year 1967, the depreciation allowable on account of the leasehold assets of the Wayside Inn amounted to $16,222.00. As owner of the leasehold, such depreciation was claimed in the return of the Wayside Investment Company, the partnership, for the taxable year ended May 31, 1967. In the return filed by the petitioners for the taxable year 1967, depreciation of $16,222.00 was claimed on account of the assets used in the business of the Wayside Inn. The depreciation allowable in the assets of the Wayside Inn for the period from January 1 to May 31, 1967, is $6,759.17. Petitioners now concede that they are not entitled to claim depreciation for that period. Accordingly, petitioner now claims depreciation for the period from June 1 to December 31, 1967, amounting to $9,462.83 on the theory that petitioners reacquired the leasehold interest as of June 1, 1967. For the taxable year 1968, petitioners reported that the Wayside Inn had a net loss in the amount of $53,314.12. *263 On their 1968 return petitioners claimed the entire loss and claimed a depreciation on account of the leasehold assets in the amount of $15,225.00. As of June 1, 1967, it appeared that the four corporations, namely, Erickson Construction Company, Erickson Heavy Construction Company, Erickson Investment Company, and Arden Sand and Gravel Construction Company, had net operating losses exclusive of any loss attributable to the operation of the Wayside Inn. In reliance upon section 482, the respondent determined that the petitioners were not entitled to deduct 100 percent of the losses of Wayside Inn but were only entitled to 20 percent of such losses for the taxable years 1967 and 1968. The respondent also disallowed the depreciation claimed by the petitioners on the leasehold for the taxable years 1967 and 1968. The Erickson Construction Company, Inc., maintained its books and records and reported for Federal income tax purposes on a fiscal year basis beginning June 1 and ending May 31 of each year. For the corporation's taxable years ending May 31, 1965, May 31, 1966, May 31, 1967, and May 31, 1968, respondent disallowed certain expenses claimed and categorized by the corporation *264 as travel and entertainment expenses, consisting of numerous amounts which petitioner, individually, charged at restaurants, clubs, and various other places and which the corporation paid. Also, one of the so-called travel and entertainment amounts disallowed is a check drawn by the corporation to petitioner, individually. Neither the books and records of Erickson Construction Company nor the books and records of petitioner, individually, show or provide any information with respect to any of said expenditures other than the fact of payment to the named payee. Respondent determined that the amounts disallowed the corporation, less the dividend exclusion, constituted taxable dividends to the petitioners in the following amounts: Taxable year
Dividend
1965
$4,306.18
1966
6,450.34
1967
1,730.37 At all times material herein, the earnings and profits of Erickson Construction Company, Inc., exceeded the amounts deemed to be a dividend by respondent. In 1959 petitioner acquired certain real property located in Sacramento, California. The improvements consisted of an office building, a warehouse building, a machine shop and several small sheds. The office *265 building, machine shop and sheds were rented to Erickson Construction Company, Inc., and the warehouse was rented to an unrelated third party. In September 1965, petitioner was formally notified by the State of California that the real property was to be condemned for use in connection with a state highway. In January or February 1966, petitioner received total proceeds from the condemnation of $170,703.00. His adjusted basis for the property condemned was $27,497.00 and the gain realized in petitioner's taxable year 1966 was $143,206.00. In 1965 and 1966, petitioner purchased certain other property in and about Sacramento, California, for a total cost of $109,623.55. Respondent accepted such purchase as qualified replacement property pursuant to section 1033(a)(1). In May 1966, petitioner purchased two parcels of real property (hereinafter referred to as Parcel 1 and Parcel 2, respectively) located at Lake Tahoe, California. He paid $20,000 for Parcel 1, which was unimproved and bordered on Lake Tahoe. He paid $30,000 for one-half interest in Parcel 2, which adjoined Parcel 1 at the rear.Respondent has conceded that Parcel 2 is qualified replacement property from the *266 aforesaid condemnation to the extent of $30,000. In August-September 1966, petitioner constructed a house on Parcel 1 at an approximate cost of $44,000. A boat dock was installed and a boat was moored there and was available for petitioners' use. Petitioner used the lake house almost every weekend. In 1965 Erickson Investment Company purchased condominiums on property located within a short distance of Parcel 1. While at the lake house, the petitioner was engaged in the promotion and sale of the condominiums on behalf of the corporation. Shortly after the sale of the last condominium, petitioner sold the lake house. The house was never rented and petitioners never claimed depreciation on it. The respondent has determined that the amounts expended for the acquisition of Parcel 1 and the erection of a house thereon did not constitute an investment in property similar or related in use to the condemned Sacramento property within the meaning of section 1033(a)(1). OPINION In 1962 petitioner and two associates entered into an agreement for a 20-year lease in property to be operated as a restaurant to be known as Wayside Inn. In 1963 petitioner's associates withdrew from *267 the venture leaving petitioner as the sole owner of the leasehold interest. As such, he operated the restaurant for his own account until June 1, 1964. Faced with losses, as of June 1, 1964, petitioner entered into an agreement purporting to lease the restaurant property to the four corporations for a fixed yearly rental and an equal share in the net profit or loss from the operation of the restaurant. After June 1, 1964, the Wayside Inn continued to operate at a loss. In addition, it became apparent that the four corporations would have no taxable income against which to charge the losses of the Wayside Inn. As of June 1967, petitioner attempted to terminate the agreement whereby the leasehold interest had been transferred to the four corporations. In his returns for the taxable years 1967 and 1968, petitioner thereupon claimed 100 percent of the operating losses of the Wayside Inn, as well as the depreciation attributable to the leasehold interest. Pursuant to section 482, [2] the respondent reallocated the operating losses and the depreciation expense of the Wayside Inn for the taxable years 1967 and 1968, in accordance with the agreement of June 1, 1964, citing , *268 affg. a Memorandum Opinion of this Court, cert. denied . There is present here the requisite "control" by petitioner of the four corporations. If there had been, infact, a transfer of the interests of those corporations in the Wayside Inn lease to the petitioner as of June 1, 1967, the respondent's determination would present the question whether such allocation was necessary in order to prevent the evasion of taxes or clearly to reflect the income of the *269 four corporations within the meaning of section 482. With respect to this issue, there is presented an anomalous situation. The petitioners operated the restaurant and any gain or loss therefrom was, in the first instance, attributable to them. On the basis of the record in this case, respondent might have been equally justified in allocating the losses claimed by the four corporations prior to June 1, 1967, to petitioner. However, respondent has chosen not to challenge the agreement of June 1, 1964.Having made such agreement, petitioner is "stuck with it." Wholly aside from section 482, petitioners have failed to prove that the interest of the four corporations in the leasehold was ever transferred back to the petitioner. The books and records of the corporations and of the petitioners reflect the original transfer of the leasehold to the corporations by petitioner. However, there is no record of any transfer of such leasehold back to petitioner as of June 1, 1967, or at anytime thereafter. The petitioner may well believe that the leasehold had been transferred in accordance with his instructions. The record fails to show that this was the case. For lack of such proof, *270 the determination of the respondent must be sustained with respect to this issue. During the years 1956, 1966 and 1967, petitioner charged various amounts to restaurants, clubs, etc., which Erickson Construction Company, a wholly owned corporation, paid and deducted as business expenses. Respondent disallowed the deduction of such expenditures by the corporation for lack of substantiation. At the same time, respondent determined that petitioners had received dividends in the amounts of $4,306.18 for the taxable year 1965, $6,450.34 for the taxable year 1966 and $1,730.37 for the taxable year 1967. There are no records relating to the expenses other than those showing that the amounts charged were, in fact, paid by the corporation. The respondent determined that the amounts which the corporation paid on behalf of petitioner are constructive dividends to him. Petitioner contends that he relied on his employees to keep records of all customers and their specific business for the expenditure in question and that these employees did not do so. The Erickson Construction Company has not been able to substantiate the deduction. Petitioner had no record to substantiate the purpose *271 of the expenses paid for his account by Erickson Construction Company. Counsel for petitioner sought to have the petitioner testify from memory with respect to the purpose for which the expenditures were incurred by him and paid by Erickson Construction Company. Upon objection by respondent, the Court ruled that such testimony was inadmissible in the absence of any corroborative evidence. Petitioner's uncorroborated testimony does not meet the requirement of substantiation. See . The deduction of the expenditures by Erickson Construction Company was disallowed by the respondent. No effort was made on behalf of the company to challenge that determination. An expenditure made by a corporation for the personal benefit of its shareholder may result in constructive dividend income to the shareholder. ; . The expenses incurred by petitioner are unsubstantiated and thus not deductible by the Erickson Construction Company as a business expense. Likewise, petitioner could produce no records to show that the amounts in question *272 did not inure to his personal benefit. Under such circumstances the respondent's determination must be upheld. ; . In the taxable year 1966, the petitioner received an award of $170,703 from the State of California as a result of the condemnation of certain real property located in Sacramento, California. The property consisted of an office building, a warehouse, a machine shop and several small sheds. The office building, the machine shop and sheds were rented by petitioner to Erickson Construction Company, Inc. The warehouse was rented to an unrelated third party. The petitioner's adjusted basis for the property was $27,497, and the resulting gain was $143,206. Respondent has accepted the purchase by petitioner of other properties as qualifying for replacement under section 1033(a)(1) of the property condemned for a total cost of $139,623.55. Petitioner contends that an additional property, referred to as Parcel 1, on which petitioner caused a house to be erected, should likewise be deemed as property similar or related in service or use to the property condemned *273 within the meaning of section 1033(a)(1). Section 1033(a)(1) provides: (a) General Rule.--If property (as a result of its destruction in whole or in part, theft, seizure, or requisition or condemnation or threat or imminence thereof) is compulsorily or involuntarily converted-- (1) Conversion into similar property.--Into property similar or related in service or use to the property so converted, no gain shall be recognized. The property condemned was property held by petitioner for the production of income, that is, rent. Petitioner has failed to prove that Parcel 1 and the house built thereon was held either for the production of income or for investment. The property was not rented and no depreciation was ever claimed on account of its use. The petitioner admittedly visited the property on weekends. It is his claim that at those times he used the property as a sales office in promoting the sales of nearby condominiums which had been purchased by Erickson Investment Company. However, petitioner derived no income from the sale of such condominiums and was not reimbursed by Erickson Investment Company for any expenses incurred in the use of the residence. Accordingly, *274 even accepting petitioner's allegations, the property was not held by petitioner either for the production of income or for use in the trade or business of the petitioner, as distinguished from his corporation. , cert. denied . If there was any business use of the property, it was the business of Erickson Investment Company. Respondent's determination with respect to this issue is sustained. Decision will be entered under Rule 155. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩
2. SEC. 482. ALLOCATION OF INCOME AND DEDUCTIONS AMONG TAXPAYERS. In any case of two or more organizations, trades, or businesses (whether or not incorporated, whether or not organized in the United States, and whether or not affiliated) owned or controlled directly or indirectly by the same interests, the Secretary or his delegate may distribute, apportion, or allocate gross income, deductions, credits, or allowances between or among such organizations, trades, or businesses, if he determines that such distribution, apportionment, or allocation is necessary in order to prevent evasion of taxes or clearly to reflect the income of any of such organizations, trades, or businesses.↩